June 10, 1909.

———o———

## Court of Appeal, Parish of Orleans.

## MRS. JOSEPHINE COLOMBEL VS. HOUSEY AND ASSET ET AL.

A party is not estopped by judicial declarations when these were made for the convenience, advantage and at the instance of persons who now claim the benefit of the estoppel. It is essential that the party claiming the benefit of the estoppel must have proceeded in good faith.

Appeal from the Civil District Court, Division "E."

John Dymond, Jr., for Plaintiff and Appellant.

Porteous & McMurray, for Defendant and Appellee.

ESTOPINAL, J. Plaintiff, alleging herself to be the owner of the premises 4021 Iberville Street, this city, sues to recover of the commercial firm of Housey & Asset, the lessees of the premises, and Lucien Asset, the surety on the lease, individually and in solido, the sum of One Hundred and Fifteen Dollars, Seventy Dollars of which is claimed for rent of the premises for the months of August and September, 1908, and Forty-five Dollars for damages to the property.

The defendants in their answer aver that they leased said premises for a period of ten months, beginning on December 1, 1907, and ending on the 30th day of September, 1908, at a monthly rental of Thirty-five dollars; that during the month of June, 1908, they decided to discontinue business and so noti-

—360—

fied plaintiff, their lessor, and that with her knowledge and consent surrendered all of their assets to the Louisiana Molasses Company to be disposed of to the best advantage of their creditors, including plaintiff; that all of their creditors acquiesced in this arrangement; that the contents of their store were sold to a Albert Bernstein, with the knowledge and consent of plaintiff, and that at the time there were four (4) rent notes outstanding; that they surrendered the premises to said Bernstein, to whom the lease was transferred; that thereafter Bernstein filed his petition in bankruptcy, surrendering the property in said leased premises as well as the key thereof to the referee in Bankruptcy and *that the plaintiff attended and took part in the bankruptcy proceedings instituted by the said Bernstein.*

The defendants further aver that they paid the rent regularly up to the time of the transfer of the lease to Bernstein, and that the latter thereafter paid the rental; that they delivered the prmises to Bernstein in good condition, etc., etc.

Upon the trial, when plaintiff attempted to prove up the case by showing that two rent notes (for August and September, 1908) drawn and signed by the defendants were unpaid, the defendants objected, urging that plaintiff, having taken part in the Bernstein bankruptcy proceedings by filing her claim for the rent of said months of August and September, 1908, was estopped by record from now making the same claim in an action against the defendants.

Ordinarily this position would be absolutely decisive of the issues, favorable to the defendants, but the record discloses a state of facts which will not justify the court in sustaining defendant's contention.

One of the essentials to sustain the plea of estoppel, which we think defendants have pleaded with sufficient definiteness in their answer, whether an estoppel *en pais* or of record, is that the party claiming the benefit of the estoppel must have proceeded in good faith. This element is wanting in the instant case. The facts as we gather them are substantially as follows:

The defendants leased certain premises from plaintiff in December, 1907, for a period of ten months, or until the 30th of September, 1908.

In June, 1908, defendants sold their business to Albert Bernstein and then called upon plaintiff or her attorney and sought their consent to a transfer of the lease to Bernstein. Plaintiff

made no objection to such an arrangement provided Bernstein secured a surety on the lease equally as good as Lucien Asset, the surety on the lease for defendants. Plaintiff agreed to release defendants from the obligations under their lease and to surrender to them their notes *whenever Bernstein had secured a proper and acceptable surety on his lease and rent notes.*

Bernstein had suggested his father-in-law as surety, and he was acceptable to plaintiff, but it appears the father-in-law refused to sign a new lease and rent notes which had been handed Bernstein by plaintiff, and these were returned to the latter.

The rent notes executed by defendants which would have been returned to them had Bernstein signed up the lease, remained in bank for collection for account of plaintiff.

When Bernstein took possession of the premises four (4) of defendant's notes were in bank, outstanding. Two of these were paid, and defendants contend that the evidence shows that plaintiff knew that they had been paid by Bernstein.

From our appreciation of the issues it does not matter who paid them. The first inquiry to be made is, had there been a transfer of lease? We must answer in the negative. The negotiations to that end and the willingness of plaintiff to transfer the lease were not sufficient. The conditions upon which the transfer was to be made were not carried out, and hence no transfer or new lease was ever made.

After occupying the premises for a few weeks Bernstein went into the bankruptcy court and surrendered his property.

As we have said, there was no transfer of the lease to Bernstein, and therefore he never became plaintiff's lessee, but her sub-tenant; quoad the defendants, however, he was their tenant. Plaintiff, not considering Bernstein to be her lessee, did not at once pursue her claim against him in the bankruptcy court, but made a demand upon defendants for the payment of the unpaid rent notes for August and September, 1908, and just here arises the circumstance, provoked by the defendants and upon which they base their plea of estoppel.

It appears by the record, that when called upon to pay these notes the defendants who had knowledge of the non-execution of the transfer of lease to Bernstein appealed to plaintiff's attorney to file a claim in the bankruptcy proceedings and endeavor to recover some money and thereby help them out of their trouble.

It is claimed by counsel for defendants both at the bar of

the court and on brief that the defendants had no knowledge before Bernstein went into bankruptcy, that the lease to Bernstein had never been executed. They should have known and for a very good reason. Were they not to be released of their contract and their notes surrendered to them when the lease was made over to Bernstein? The record shows they were never released and their notes never surrendered. Was that not notice of the status of affairs? Unquestionably it was.

They suggested to plaintiff's attorney that he file the claim in the name of his client, Mrs. Colombel, and agreed to pay the attorney a fee of 10 per cent on the amount recovered. It was under these conditions that the attorney representing plaintiff filed the claim in the bankruptcy court averring that Seventy Dollars was due her by Bernstein as lessee of her premises.

We are satisfied from the evidence that the action of plaintiff in going into the bankruptcy court was taken at the instance of defendants, who will not now be allowed to urge as a defense an estoppel of record when they induced and invited a person to do a certain thing intended to be in their interest.

In Succession of A. Harris, 39 A. 443, the Supreme Court said:

"A party is not estopped by judicial declarations made for the purpose of simplifying proceedings and for the common interest and convenience of all parties concerned, and which have neither misled nor damaged any one."

The rule of law which holds parties to their allegations of record and does not permit them to falsify what they have solemnly declared to be the fact is one based on the soundest principles and one which it is far from our intention to avoid, but this rule is not so drastic and exclusive as to apply in cases where the circumstances, as in the instant case, show bad faith on the part of those who attempt to shelter themselves behind it.

In Strekmeyer vs. Cesting, 38 An. 102, the Court held:

"The doctrine of estoppel, however apparently emphatic, is full of exceptions, which vary according to circumstances, and was never designed to apply to a case like the instant one, in which the decloration made which is an illegal deduction from facts, has led no one astray and occasioned damage to nobody."

In the case at bar, plaintiff, for the convenience and benefit and at the instance of defendant, filed the claim in the bankrupt proceedings, a step which she had not intended to take until so

importuned to do by defendants. They cannot now plead an estoppel by record.

On the branch of this case touching the claims for damages plaintiff has not made out her case with sufficient certainty. It is questionable whether the defendants were altogether responsible for the disordered condition of plaintiff's premises. Mr. Charles Desforges, a witness for the defense, says that one of the holes in the floor was cut by a former tenant, a relative of plaintiff. His testimony, besides, indicates that plaintiff neglected her property to a great extent.

Plaintiff's claim against defendants for the rent amounting to Seventy Dollars ($70.00) must be allowed, but she cannot recover the sum of Forty-five ($45.00), for damages to premises.

For the reasons assigned it is therefore ordered adjudged and decreed that the judgment appealed from be and it is hereby avoided, reversed and set aside, and it is now ordered that there be judgment in favor of plaintiff and against defendants individually and in solido in the sum of Seventy Dollars ($70.00), with legal interest from judicial demand, defendants to pay costs here and below.

June 10, 1909.

Rehearing refused, June 25, 1909.

———o———

## No. 4747.