SIGMUND A. CZARNECKI *v.* PLASTICS LIQUIDATING
COMPANY, INC., ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued October 12—decision released November 20, 1979

*Harry L. Nair,* for the appellant (plaintiff).

*Stanley Leven,* with whom, on the brief, was *Arnold W. Aronson,* for the appellees (defendants).

ARTHUR H. HEALEY, J. This action arises out of a petition brought by the plaintiff, Sigmund A. Czarnecki, pursuant to the provisions of General

Statutes § 33-381, to determine a claim he made against two Connecticut corporations: Plastics Liquidating Company, Inc. (hereinafter Plastics) and Woodstock Enterprises, Inc. (hereinafter Woodstock). It seeks the determination of liability for a portion of a finder's fee incurred in the sale of the corporate assets of Plastics and Woodstock. The petition was referred to a state referee, who rendered judgment for the defendants. The plaintiff has appealed.

The plaintiff has made a substantial attack on the finding. He claims that the court erred (1) in refusing to find certain facts that were admitted and undisputed; (2) in finding certain facts without evidence; and (3) in finding other facts in language of doubtful meaning so that their real significance does not appear.[1]

We have carefully examined each of the plaintiff's claims directed to the finding and have concluded that no correction is warranted. His claim that the court did not find certain material facts that were admitted and undisputed is without merit. Some of the facts sought to be added were neither admitted nor undisputed; the remainder are either implicit in the finding or immaterial to our disposition. See *Salvatore* v. *Milicki,* 163 Conn. 275, 277, 303 A.2d 734 (1972); *Cappiello* v. *Haselman,* 154 Conn. 490, 492, 227 A.2d 79 (1967). In this regard, we point out that simply because a fact was testified to and not directly contradicted by another witness is wholly insufficient to secure its addition to the finding. Practice Book, 1978, § 3039;[2] *Martin* v. *Kavanewsky,*

---

[1] Those claims of error not briefed are considered abandoned. *Katsetos* v. *Nolan,* 170 Conn. 637, 641, 368 A.2d 172 (1976); Maltbie, Conn. App. Proc. § 327.

[2] Practice Book § 3039 was repealed as of July 1, 1979.

157 Conn. 514, 515, 255 A.2d 619 (1969). The credibility of witnesses is for the court to determine. Id. Moreover, where a paragraph of the draft finding mixes undisputed and disputed matters, it is properly refused. *Cappiello* v. *Haselman,* supra; *Holczer* v. *Independent Brass City Lodge, Inc.,* 104 Conn. 539, 540, 133 A. 666 (1926).

The plaintiff's claim that certain facts were found without evidence cannot be sustained. In reviewing this claim we are satisfied that the contested findings of fact material to our disposition are supported by evidence. In one instance, evidence supporting the referee's finding appears in the appendix to the plaintiff's brief. The claim that certain facts were found without evidence in one instance is made in conjunction with the assertion that the paragraphs involved are in language of doubtful meaning so that their real significance does not appear. We do not agree. "It is our duty to construe the finding as a whole and to give it a reasonable construction."[3] *Rosenberg* v. *Planning Board,* 155 Conn. 636, 642, 236 A.2d 895 (1967). See *Jennings* v. *Reale Construction Co.,* 175 Conn. 16, 23, 392 A.2d 962 (1978). This having been done to assist us in ruling on this claim, the significance of each paragraph appears.

The finding discloses the following facts material to our disposition. Plastics and Woodstock were Connecticut corporations that had been organized by the plaintiff Czarnecki and the defendant Alfred

---

[3] Although in one paragraph of the finding the referee refers to the plaintiff and the defendant, Alfred D. Pascale, as "partners," the word is contained in quotation marks and is clearly intended to characterize the joint role they played in the negotiations for the sale of the corporations.

D. Pascale, now deceased.[4] Plastics had been organized for the purpose of engaging in the business of manufacturing molded plastics used for packaging and Woodstock was organized as a real estate holding corporation for the purpose of holding real estate associated with the plastic company business. The plaintiff and his wife, Helen C. Czarnecki, owned 50 percent of the issued and outstanding capital stock of each corporation, and Pascale and his wife, Doris Pascale, also a defendant, owned the remaining 50 percent of the issued outstanding capital stock of each corporation. The board of directors of each corporation consisted of the plaintiff and his wife, Helen Czarnecki, and the defendant and his wife, Doris Pascale. Both Plastics and Woodstock were dissolved on November 17, 1971, by the filing of a certificate of dissolution with the secretary of the state. The corporations were in the process of liquidation at the time the instant petition was brought.

On June 30, 1971, both Plastics and Woodstock sold all their assets to Morgan Construction Company (hereinafter Morgan Construction) of Worcester, Massachusetts. About one and a half to two years prior to the actual sale of the corporations' assets, Horace Gooch of Worcester, Massachusetts, who had at one time employed Czarnecki, brought to his attention the fact that Morgan Construction was interested in purchasing the companies. Negotiations for the sale of the assets of Plastics and Woodstock were commenced

---

[4] At oral argument the administrator of the estate of Alfred D. Pascale made a motion in which he sought to be substituted as a party defendant. We granted this motion. For the purpose of clarity, we continue to refer to Alfred D. Pascale in this opinion as one of the individual defendants.

between Gooch and the plaintiff, but broke down and later terminated because of an inability to agree on price. About eight to twelve months after negotiations ceased, Gooch again contacted the plaintiff and arranged meetings with officials of Morgan Construction at which the defendant Pascale handled the negotiations as to price with Gooch and Paul Morgan of Morgan Construction. After long negotiations, the price of $1,730,000 in cash was agreed upon, $1,630,000 of which was for the assets of both corporations and $100,000 of which was to cover the tax liabilities, attorney's fees and other corporate liabilities incident to the sale. Gooch was the procuring cause in producing a customer to whom the corporate assets were sold and he participated actively in negotiating the final transaction.

When the plaintiff first brought the proposed offer to the defendant Alfred Pascale and said that the sellers would be required to pay a finder's fee, Pascale told him that, so far as he knew, the buyer was always responsible for the finder's fee. Gooch discussed a finder's fee with the plaintiff and Morgan and it was agreed between them that the buyer and seller would each pay 50 percent of this fee. Alfred Pascale was not at that meeting, however, and he never personally agreed to a finder's fee with either Gooch or Morgan. Gooch, Morgan and the plaintiff agreed upon a finder's fee of $70,000 to be paid one half by the buyer and one half by the selling corporations. Upon hearing this, Alfred Pascale said that he would have no part of such a fee, and that if any further negotiations were to take place he must be relieved of any such obligation. Pascale made it plain to the sellers' special counsel, Bayard T. DeMallie, that he refused to pay any part of a

finder's fee and that further negotiations could continue only upon that condition. DeMallie informed Gooch of Pascale's position before the closing. Negotiations did continue. Attorney John R. Blake, who represented the buyers, and Gooch prepared a letter, introduced as an exhibit, which was signed by Gooch and sent to Alfred Pascale. In that letter Gooch agreed that, upon consummation of the proposed sale of the corporate assets of Plastics and Woodstock to Morgan Construction and in consideration of Pascale's approval of that sale, Pascale would owe Gooch "no finder's fee." Robert Nielson, vice president of finance and treasurer of Morgan Construction, stated at one of the meetings, when negotiations were breaking down, that he and his corporation were aware that Alfred Pascale would have no part of the fee. Gooch, who was friendly with the plaintiff, discussed the sellers' "second half" of his commission only with the plaintiff and did not discuss his fee with Alfred Pascale.

Meetings of the directors and stockholders of Plastics and Woodstock were held on June 17, 1971. At these meetings there was adopted a plan of complete liquidation to be consummated within twelve months of June 17, 1971, and the president and treasurer of each corporation were authorized to take such action as might in their judgment be necessary to accomplish the dissolution. On June 30, 1971, the sale was consummated. After the certificates of dissolution for the corporations were signed, a notice of dissolution of each corporation was published in an area newspaper advising creditors to present their claims on or before April 1, 1972, to the attorney for the corporations. On January 3, 1972, the plaintiff filed a claim against

the corporations for $17,500, representing the payment made by him to Gooch as the "sellers' share" of the finder's fee.[5]

The plaintiff essentially claims that if Gooch was entitled to a commission from the defendants Plastics and Woodstock, it then follows that Czarnecki, as president, having personally paid a valid debt of the corporations, is entitled to reimbursement from them. The general principle is that where a director or other corporate officer pays valid existing debts of a corporation he is ordinarily entitled to reimbursement. See 3 Fletcher, Cyclopedia of Corporations (Perm. Ed.) § 953. The plaintiff's position is that, as against the defendants Alfred Pascale and Doris Pascale, this proceeding "is not an action to enforce any obligation on their part to personally pay any part of the finder's fee but to subject the property distributed to them by the corporations in dissolution, which the law treats as a trust fund, to payment of a valid and enforceable claim by the plaintiff against the corporation."[6]

We begin with the principle that the acts of a corporation's president will bind the corporation only where "it is shown that his acts are so related to his duties as president that they may reasonably be held to have been done in the prosecution of the business of the corporation and while he was acting within the scope of his employment." *Baptist* v.

---

[5] Apparently, Gooch decided to reduce the "sellers' share" of the finder's fee from $35,000 to $17,500.

[6] The plaintiff asserts in his brief that the referee failed to decide the central issue in the case, that is, whether there is corporate, as opposed to personal, liability for the debt incurred. A reasonable construction of the finding, however, demonstrates that this conclusion was implicit in those stated by the referee. See Maltbie, Conn. App. Proc. § 135; *Martin* v. *Kavanewsky*, 157 Conn. 514, 516, 255 A.2d 619 (1969).

*Shanen,* 145 Conn. 605, 608, 145 A.2d 592 (1958); accord, *Cohen* v. *Holloway's, Inc.,* 158 Conn. 395, 406–407, 260 A.2d 573 (1969). It cannot be disputed that engaging the services of a person whose task it is to negotiate the sale of a corporation's assets is outside the course of the corporation's ordinary business, and is equally outside the course of the president's scope of employment. See 2 Fletcher, op. cit. §§ 559, 592. Hence, in order for the plaintiff to prevail, it was incumbent upon him to demonstrate that (1) his action was expressly authorized by resolution of the board of directors; or (2) his action was impliedly authorized by the board of directors; or (3) his action, although not authorized, was subsequently ratified by the board of directors. See 2 Fletcher, op. cit. §§ 444, 466, 501; 19 Am. Jur. 2d, Corporations §§ 1163, 1241. Whether a corporate officer is authorized to act on behalf of a corporation is a question of fact to be resolved by the trier. See 2 Fletcher, op. cit. § 488. The plaintiff claims that the court's conclusion that the defendant corporations were not liable for the debt incurred by the plaintiff is clearly erroneous. We do not agree. It is enough for us to note that the plaintiff introduced no evidence that his action to incur a debt allegedly on behalf of the corporation was ever ratified by the board of directors and that he produced no resolution expressly authorizing him to incur the debt in question. Nor can his authority be inferred from the resolution that was passed authorizing the president and the treasurer to take such action as might in their judgment be necessary to accomplish the proposed dissolution. "Implied authority is actual authority circumstantially proved. It is the authority which the principal *intended* his agent to possess." 2 Fletcher, op. cit.

§ 438. (Emphasis added.) It cannot be said, in light of the facts found, which we have set out above in some detail, that the board of directors intended to confer upon the plaintiff the authority to pay for the services of Gooch. The finding amply demonstrates that Alfred Pascale's adamant position on the finder's fee was well known to the participants in the sale.

The court's conclusions are tested by the finding and not by the evidence; *Weingarten* v. *Allstate Ins. Co.,* 169 Conn. 502, 504, 363 A.2d 1055 (1975); *Yale University* v. *New Haven,* 169 Conn. 454, 464, 363 A.2d 1108 (1975); and must stand unless they are legally or logically inconsistent with the facts found or involve the application of some erroneous rule of law applicable to the case. *Lonergan* v. *Connecticut Food Store, Inc.,* 168 Conn. 122, 124, 357 A.2d 910 (1975); *Sea Beach Assn., Inc.* v. *Water Resources Commission,* 164 Conn. 90, 93, 318 A.2d 115 (1972). Under the circumstances, the court's conclusion that the debt incurred by the plaintiff was not chargeable to the defendant corporations or to the individual defendants will not be disturbed.

There is no error.

In this opinion the other judges concurred.